## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-106-O |
| | § | |
| ABBAS T. ZADEH, | § | |
| | § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA

Pending before the Court is a Petition to Enforce Drug Enforcement Administration Administrative Subpoena (the "Petition") [doc. 1], filed by the Government (also referred to as "Plaintiff" or "Petitioner") on February 13, 2014. In accordance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b), the matter was referred to this Court for report and recommendation [doc. 6]. The Court heard oral argument from the parties on July 31, 2014. Based on the record contained herein, the applicable law, and the arguments of counsel, the Court **RECOMMENDS** that the Government's Petition [doc. 1] be **GRANTED**.

### I.    OVERVIEW

Petitioner, on behalf of the United States Department of Justice, Drug Enforcement Administration ("DEA"), petitions the Court for an order requiring Respondent Abbas T. Zadeh ("Zadeh") (also referred to as "Respondent" or "Defendant") to comply with an administrative subpoena (the "Subpoena") issued by the DEA pursuant to 21 U.S.C. § 876(c) relative to an ongoing investigation for possible misconduct in violation of the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq. It is undisputed that Zadeh, who is a DEA registrant permitted to prescribe controlled substances in Schedules II-V as defined by the CSA, has failed to comply

1

with the Subpoena issued to him.  By way of his filings in this action, Zadeh challenges the

validity and enforceability of the Subpoena.

Zadeh asserts that this case presents a number of important issues of Constitutional and

statutory interpretation that are matters of first impression, at least in the Fifth Circuit.  In sum,

Zadeh frames the issues as:  Whether the Government is statutorily and constitutionally entitled

to obtain the medical records of the thirty-five patients identified in the Subpoena and, if so,

whether the Government can simultaneously prevent Zadeh from informing the thirty-five

patients of the Government's attempts to obtain their records.   On the other hand, the

Government argues that the subject Subpoena was lawfully issued and there is no legal

justification for Zadeh's failure to comply.  Consequently, the Government seeks an order to

enforce the Subpoena.

## II.   FACTUAL BACKGROUND

The following undisputed facts are taken from the Petition, the attached declarations, and

Zadeh's response to the Petition.  On or about December 16, 2013, the DEA issued the Subpoena

pursuant to 21 U.S.C. § 876 of the CSA.  *See* Petitioner's Appendix in Support of Petition to

Enforce Drug Enforcement Administration Administrative Subpoena ("Pet'r App."), Ex. 1 at 6.[1]

In the Subpoena, the DEA states that it is permitted by 45 C.F.R. § 164.512(f), which is a

regulation pursuant to the Health Insurance Portability and Accountability Act of 1996

("HIPAA"),[2] 42 U.S.C. § 1320d *et seq.*, to request protected health information.  *See* Pet'r App.,

Ex. 2 at 9.  The Subpoena seeks production by Zadeh of all "[p]atient medical records" for thirty-

---

[1] Because the pages of the Government's appendix are not consecutively numbered, the cited page numbers refer to the page numbers electronically stamped by the Court's ECF system at the top right of each page of the appendix.

[2] Congress enacted HIPAA in 1996 to address the importance of the privacy of medical records.  *See National Abortion Federation v. Ashcroft*, No. 04 C 55, 2004 WL 292079, at *2 (N.D. Ill. Feb. 6, 2004).

five (35) patients, covering a period of approximately fourteen months (from October 1, 2012 to

November 25, 2013).  *See* Pet'r App., Ex. 2 at 9-10.  The Subpoena broadly defines "patient

medical records" to include "diagnosis, intake, prescriptions, laboratory work, copy of

identification, insurance and method of payment."  Pet'r App., Ex. 2 at 9.  In addition, the

Subpoena states:

> This is an administrative subpoena issued by the Drug Enforcement
> Administration (DEA), a federal law enforcement agency, for records that may
> include protected health information.  DEA is authorized by 21 U.S.C. § 876 to
> issue an administrative subpoena and is permitted by 45 C.F.R. § 164.512(f) to
> request protected health information.  The information sought is relevant and
> material to a legitimate law enforcement inquiry; the subpoena is specific and
> limited in scope to the extent reasonably practicable in light of the purpose for
> which the information is sought; and de-identified information cannot reasonably
> be used.  NONDISCLOSURE: Disclosure of any information concerning this
> subpoena would impede a federal law enforcement investigation.
>
> Please do not disclose the existence of this request or investigation for an
> indefinite time period.  Any such disclosure could impede the criminal
> investigation being conducted and interfere with the enforcement of the
> Controlled Substances Act.

(Pet'r App., Ex. 2 at 9.)

On February 13, 2014, the Government filed the present Petition along with a

Memorandum and an Appendix in support.  Thereafter, on April 24, 2014, Zadeh filed a

Response.  In a Status Report, dated July 11, 2014, the Government proposed placing several

limitations on the original Subpoena, including limiting the scope of the Subpoena for medical

records to the following: (1) information sufficient to identify the patient, including the patient's

full name, date of birth, and address; (2) limited intake information necessary to identify the

patient and the condition for which a controlled substance was prescribed; (3) information

related to a diagnosis for which a controlled substance was prescribed; (4) laboratory work upon

which a controlled substance was prescribed, to include MRI results and blood test results; and

(5) information pertaining to the prescription of a controlled substance, including dates of prescriptions, types of prescriptions, and quantities prescribed. (July 11, 2014 Joint Status Report [doc. 23] at 2-3.)   The Court held a hearing on the Petition on July 31, 2014.

## III.   PRELIMINARY PROCEDURAL ISSUE

At the oral argument in this matter, the parties discussed the procedural posture of the case before the Court. To begin, the Federal Rules of Civil Procedure apply to adversary actions to enforce subpoenas, unless exempted. *See* Fed. R. Civ. P. 81.   Furthermore, the Court notes that the Petition to enforce an agency subpoena is a unique proceeding and the Court's scope of inquiry is narrow. *See N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991, 997 (N.D. Cal. 2004).   Moreover, "[s]ubpoena enforcement proceedings are summary in nature." *E.E.O.C. v. Suburban Transit Sys., Inc.*, 538 F. Supp. 530, 533 (D.C. Ill. 1982).   Consequently, while the petition to enforce is akin to a dispositive motion as it "constitutes the entire case before the Court," the over-riding matter for the Court to decide is whether to enforce the subpoena. *See In re Admin. Subpoena Blue Cross Blue Shield of Mass., Inc.*, 400 F. Supp. 2d 386, 389 (D. Mass. 2005).

The statute pursuant to which this action was brought, 21 U.S.C. § 876, specifically provides that the "Attorney General may invoke the aid of any court of the United States within the jurisdiction of which the investigation is carried on or of which the subpoenaed person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subpoena."   The critical issues that the court must consider are: (1) whether the investigation is conducted pursuant to a legitimate purpose; (2) whether the information requested under the subpoena is relevant to that purpose; (3) whether the agency already has the information it is seeking with the subpoena; and (4) whether the agency has followed the necessary administrative

steps in using the subpoena. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001). Thus, the Court will review the Petition under the standards set forth above regarding enforcement of subpoenas and make appropriate findings of fact and conclusions of law.

## IV.   ANALYSIS

Pursuant to 21 U.S.C. § 876 of the CSA, the Attorney General may subpoena witnesses and require the production of any records that the Attorney General finds are relevant or material to any investigation relating to functions under the CSA with respect to controlled substances. 21 U.S.C. § 876(a). These administrative subpoenas are not self-enforcing and "in the case of contumacy by or refusal to obey a subpena[3] issued to any person," the Attorney General may "invoke the aid of any court of the United States" within the appropriate jurisdiction. 21 U.S.C. § 876(c) (footnote inserted). In his Response to Petition for Enforcement, Zadeh claims generally that this action is barred as a matter of law pursuant to: (1) the inapplicability of HIPPA; (2) Texas statutory law; and (3) the Fourth Amendment to the Constitution. Defendant's Response to Petition ("Def.'s Resp. to Pet.") at 5-29.[4] In addition, Zadeh argues that the nondisclosure language in the Subpoena is not based upon any legal authority. The Court will consider each basis herein.

---

[3] The Court notes that "subpoena" can also be spelled "subpena" as used in the CSA. *See* Black's Law Dictionary 1654 (10th ed. 2010).

[4] The Court notes that Zadeh, in his response, analyzes the issues in a different order. For the Court's convenience, it will consider the issues raised by Zadeh in the order set forth herein.

A. **HIPAA**

Pursuant to 45 C.F.R. § 164.512(f), which is a HIPAA regulation, a "covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official" if certain conditions are met, including in compliance with and as limited by the relevant requirements of an administrative subpoena. 45 C.F.R. § 164.512(f)(1)(ii)(C). As to HIPAA, Zadeh argues that "HIPAA is not applicable to Dr. Zadeh because he is not a 'covered entity' for purposes of the statute." Def.'s Resp. to Pet. at 22. Defendant claims that HIPAA is intended to prevent the disclosure of various medical records, except in very limited circumstances that are generally set forth in 45 C.F.R. § 164.512. Def.'s Resp. to Pet. at 24.[5] Defendant argues that the Government's reliance on 45 C.F.R. § 164.512(f)(1)(ii)(C) to allow disclosure of Zadeh's medical records is misplaced since such provision only applies to "covered entities." (*Id.* at 22-25.)

The Government concedes that "Respondent does not appear to meet HIPAA's definition of a 'covered entity.'" Pl.'s Reply in Support of Petition to Enforce Administrative Subpoena ("Pl.'s Reply") at 13. The Government claims that, accordingly, HIPAA does not apply and would not prohibit the requested disclosure. *Id.* Furthermore, at the hearing before the Court, the Government further stated:

> But it seems—of course, Abbas Zadeh[6] has indicated he's not a covered entity. We accept him at face value on that subject. We have no way to

---

[5] The Court notes that "while HIPAA generally requires confidentiality of medical records, and provides both civil and criminal penalties for improper disclosures of medical information, there is no express or implied private cause of action under HIPAA." *Bailey v. Terrell ISD*, No. 3:12-CV-3962-N-BH, 2014 WL 1664230, at *1 (N.D. Tex. Apr. 25, 2014); *see Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 882 & n.8 (5th Cir. 2010); *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006). "Instead, HIPAA limits enforcement of the statute to the Secretary of Health and Human Services and, under certain circumstances, state attorneys general." *Fox v. United States*, No. 3:10-cv-126 DPJ-MTP, 2012 WL 2685067, at *2 (S.D. Miss. July 6, 2012).

[6] Zadeh's son, Joseph Zadeh, has a very similar case pending before the Court in cause number 4:14-CV-105-O in which the Government has also filed a Petition to Enforce Drug Enforcement Administration Administrative Subpoena. The hearing before the Court on July 31, 2014 was a joint hearing involving both cases.

necessarily verify it. And then Joseph Zadeh, he doesn't seem to want to confirm one way or the other, but as we've argued, whether HIPAA applies or whether it doesn't apply, the requested disclosure is not prohibited.

Transcript of July 31, 2014 Proceedings ("Tr.") at 30, lines 16-22 (footnote added).

Based upon the evidence before the Court and the admission by the Government that Zadeh is not a covered entity that is subject to HIPAA, the Court concludes that the provisions of HIPAA have not been properly invoked and, thus, will not be considered by the Court. Based on the foregoing, the next issue is whether enforcement of the Subpoena is barred by Texas law.

### B. **Texas State Law and the CSA**

Zadeh claims that Texas Occupations Code section 159.002, which is part of the Medical Practice Act, prevents disclosure of both patient communications and medical records. Def.'s Resp. to Pet. at 25-27. Section 159.002 states, as relevant here:

> (a) A communication between a physician and a patient, relative to or in connection with any professional services as a physician to the patient, is confidential and privileged and may not be disclosed except as provided by this chapter.
>
> (b) A record of the identity, diagnosis, evaluation, or treatment of a patient by a physician that is created or maintained by a physician is confidential and privileged and may not be disclosed except as provided by this chapter.

Tex. Occ. Code Ann. § 159.002 (West 2012); *see Abbott v. Tex. State Bd. of Pharmacy*, 391 S.W.3d 253, 257 (Tex. App.—Austin 2012, no pet.) ("Under chapter 159 of the medical practice act, physician-patient communications and medical records are considered 'confidential and privileged and may not be disclosed except as provided by the [medical practice act].'"). This privilege may be claimed by the patient or by the physician, on behalf of the patient. Tex. Occ. Code Ann. § 159.002(e) (West 2012). The Medical Practice Act, however, sets forth several exceptions to this privilege.

Zadeh argues that "[s]ection 159.004(1) provides that 'an exception to the privilege of confidentiality in a situation other than a court or administrative proceeding, allowing disclosure of confidential information by a physician, exists only with respect to . . . (1) a governmental agency, if the disclosure is required or authorized by law." Def.'s Resp. to Pet. at 26.  Zadeh claims that section 159.004(1) does not provide a basis for Zadeh to produce the files because it is not an independent basis for disclosure.  *Id.*  Zadeh argues that, because he is not a covered entity under HIPAA, there is no independent basis for disclosure.  *Id.*

In its reply, the Government claims that Texas law is preempted, and, regardless, it permits disclosure of the subpoenaed information.  Pl.'s Reply at 14-16.  Specifically, the Government argues that the DEA is seeking enforcement of a lawful subpoena issued pursuant to the CSA and that any state-created confidentiality provisions that interfere with such enforcement is preempted pursuant to the supremacy clause.  Pl.'s Memorandum in Support of Petition ("Pl.'s Memo.") at 5-7.

In his surreply, Zadeh claims that he has never argued that Texas law trumps federal law as there is no alleged conflict here.  Defendant's Sur-Reply to the Petition to Enforce the Drug Enforcement Administration Administrative Subpoena ("Def.'s Surreply") at 8.  In addition, Zadeh states:

> The government's argument puts the cart in front of the horse.  Dr. Zadeh's position throughout has been that an administrative subpoena issued under the authority of 21 U.S.C. § 876(a) is not the proper mechanism for invading a patient's expectation of privacy in his or her medical records.  If this Court concludes that Dr. Zadeh is correct, then the administrative subpoena should not be enforced.
>
> . . . .
>
> If the administrative subpoena is not a proper mechanism, then Dr. Zadeh **is** constrained by Texas state law from disclosing the identity, diagnosis, evaluation or treatment of his patients, unless the government can identify other

8

law requiring or authorizing disclosure, other than 21 U.S.C. § 876(a) or HIPAA. Pointing to the CSA's reporting requirement for DEA registrants, the government contends that the Texas disclosure prohibition is satisfied because disclosure is required under the CSA, 21 U.S.C. § 801 *et seq*. That is the question presented to this Court: whether the CSA, *i.e.*, a section 876(a) administrative subpoena, can be used to force a doctor to disclose medical records to the DEA, or whether the DEA must secure a warrant (which would provide a disclosure method under Texas law). If that question is answered affirmatively, then Texas law will permit disclosure, but the question must be answered first. Moreover, as set out above, the government has failed to identify any record that Dr. Zadeh must supply pursuant to the CSA that falls within the subpoena's request, such that disclosure is permitted under Texas law.

Def.'s Surreply at 8-9 (internal citations omitted).

Accepting Zadeh's framing of the issue, the Court concludes that, pursuant to the CSA, an administrative subpoena can be used to force Zadeh to disclose patient medical records to the DEA. As noted above, the Subpoena in this case was issued to Zadeh pursuant to 21 U.S.C. § 876 of the CSA[7] as part of an ongoing investigation of possible violations of the CSA. (*See* Appendix in Support of Petition to Enforce DEA Administrative Subpoena ("App. in Supp. of Pet.") at Ex. 1.) This is an appropriate purpose authorized by section 876 as such subpoenas are authorized for use in both investigation and enforcement. *See Oregon Prescription Drug Monitoring Program v. U.S. DEA*, 998 F. Supp. 2d 957, 960 (D. Or. 2014) ("The CSA empowers the Attorney General, and executive agencies acting pursuant to his authority, with broad authority to issue administrative subpoenas to investigate drug crimes."); *United States v. Mich. Dep't of Cmty. Health*, No. 1:10-mc-109, 2011 WL 2412602, at *11 (W.D. Mich. June 9, 2011). Moreover, Zadeh has presented no legal authority in which medical records have been held to be exempted from the administrative subpoena reach in the CSA.

---

[7] Congress enacted the CSA to protect the public from a growing level of drug trafficking due to an increasing drug problem in the United States. *See United States v. Mountain States Tel. & Tel. Co., Inc.* 516 F. Supp. 225 (D.C. Wyo. 1981). "The [CSA] was intended as a comprehensive federal program to place certain drugs and other substances under strict federal controls to be administered by the Attorney General. *Id.* The CSA, "which requires all who are so engaged [in manufacturing and distributing controlled drugs] to register with the U.S. Attorney General and to maintain certain records, imposes both civil and criminal penalties for its violation." *United States v. Acklen*, 690 F.2d 70, 71 (6th Cir. 1982).

## C. Fourth Amendment

The last issue before the Court is whether the Fourth Amendment prohibition against unreasonable searches and seizures bars enforcement of the Subpoena at issue. Zadeh argues that "[o]ur society recognizes a reasonable expectation of privacy in medical records which the Attorney General should not be permitted to invade through the use of an administrative subpoena." Def.'s Resp. to Pet. at 14. In addition, Zadeh, citing various cases in support, claims that "[c]ase law, states' practices, and longstanding medical ethics known to the Fourth Amendment's framers and relied on by the public today support a finding that medical files are protected by a reasonable expectation of privacy. Def.'s Resp. to Pet. at 14; *see* Def.'s Resp. to Pet. at 14-20.

An "administrative subpoena may not be 'too indefinite or broad.'" *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012). The critical issues that the Court must consider are: (1) whether the investigation is conducted pursuant to a legitimate purpose; (2) whether the information requested under the subpoena is relevant to that purpose; (3) whether the agency already has the information it is seeking with the subpoena; and (4) whether the agency has followed the necessary administrative steps in using the subpoena. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001).[8] The initial burden to show that such criteria have been met is on the government, although the initial burden to make a prima facie case is "minimal." *United States*

---

[8] This standard has been phrased slightly differently in other circumstances. *See, e.g., United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (stating that an administrative subpoena is valid if: (1) it is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome; *Oregon Prescription Drug Monitoring Program*, 998 F. Supp. 2d at 966. *See also E.E.O.C. v. Md. Cup Corp.*, 785 F.2d 471, 476 (4th Cir. 1986) ("Upon petitioning for enforcement of an administrative subpoena, the issuing agency must make a threshold showing that the subpoena is within the agency's authority, that the agency has satisfied statutory requirements of due process, and that the information sought is relevant and material to the investigation.")

*v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 489 (5th Cir. 2014). Once the Government has made a prima facie case, the burden shifts to the party opposing the subpoenas.[9] *Id.* A party resisting enforcement bears a heavy burden to establish that enforcement of the Secretary's subpoena will result in an abuse of judicial process. *United States v. Oncology Servs. Corp.*, 60 F.3d 1015, 1020 (1995). "The district court must enforce the subpoena unless the information is 'plainly incompetent or irrelevant to *any* lawful purpose.'" *Id.* (quoting *Dole v. Trinity Indus., Inc.*, 904 F.2d 867, 872 (3d Cir.1990)). "The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946). "'As long as the agency satisfies [the above] modest requirements, the subpoena is per se reasonable and Fourth Amendment concerns are deemed satisfied.'" *Colorado Bd. of Pharmacy*, 2010 WL 3547898, at *3 (quoting *United States v. Sturm, Ruger & Co., Inc.*, 84 F.3d 1, 4 (1st Cir. 1996)).

As set forth above, Zadeh argues that forcing him to produce the medical records of thirty-five of his patients violates his rights under the Fourth Amendment. The Fourth Amendment provides protection against "unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment does not protect against all searches or seizures, rather it guards against searches and seizures of items or places in which a person has a reasonable expectation of privacy."[10] *Oregon Prescription Drug Monitoring Program*, 998 F. Supp. 2d at 963. "The Fourth Amendment protects people, not places, and to invoke the protections of the Fourth Amendment, a person must first show that they have 'an actual (subjective) expectation

---

[9] "Once the agency makes this showing, the court must enforce the subpoena unless the party being investigated demonstrates that the suit is unduly burdensome." *Md. Cup Corp*, 785 F.2d at 476.

[10] "Whether a particular governmental intrusion falls within the protection of the fourth amendment depends upon whether the defendant has a reasonable expectation of privacy in the area searched or the property seized." *United States v. Acklen*, 690 F.2d 70 (6th Cir. 1982) (quoting *Katz v. United States*, 389 U.S. 347 (1967)).

of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable.'" *Id.* at 964 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

There appear to be a limited number of cases that have specifically addressed the applicability of the Fourth Amendment to DEA subpoenas under 21 U.S.C. § 876 seeking medical records. In *Oregon Prescription Drug Monitoring Program*, the state prescription drug monitoring program ("PDMP") brought an action against the DEA, seeking a declaration of its rights and obligations in complying with administrative subpoenas that sought prescription records from the PDMP. The Oregon District Court held that the "DEA's use of administrative subpoenas to obtain prescription records from the PDMP violates the Fourth Amendment." *Oregon Prescription Drug Monitoring Program*, 998 F. Supp. 2d at 967. Specifically, the Oregon District Court stated:

> In this matter, the court easily concludes that intervenors' subjective expectation of privacy in their prescription information is objectively reasonable. Although there is not an absolute right to privacy in prescription information, as patients must expect that physicians, pharmacists, and other medical personnel can and must access their records, it is more than reasonable for patients to believe that law enforcement agencies will not have unfettered access to their records. The prescription information maintained by PDMP is intensely private as it connects a person's identifying information with the prescription drugs they use. The DEA attempts to draw a distinction between medical records and prescription information in order to distinguish the present case from *Tucson Woman's Clinic's* conclusion that "all provision of medical services in private physicians' offices carries with it a high expectation of privacy." This distinction is very nearly meaningless. By obtaining the prescription records for individuals like John Does 2 and 4, a person would know that they have used testosterone in particular quantities and by extension, that they have gender identity disorder and are treating it through hormone therapy. It is difficult to conceive of information that is more private or more deserving of Fourth Amendment protection. That this expectation of privacy in prescription information is protected in ORS 431.966 and advertised on PDMP's public website, makes that expectation all the more reasonable.

*Oregon Prescription Drug Monitoring Program*, 998 F. Supp. 2d at 966 (internal footnotes and citations omitted).

On the other hand, in *U.S. Dep't of Justice v. Colorado Board of Pharmacy, supra*, the United States Magistrate Judge recommended enforcing DEA subpoenas of confidential state pharmacy records in a federal investigation of possible drug offenses by three physicians in violation of the CSA.[11]  In this case, although the Board did not bring a Fourth Amendment challenge *per se*, the Court found that the subpoenas met the "Fourth Amendment requirements and are per se reasonable" as they were authorized, properly served, and contained an "adequate description of information relevant to the investigations." *Colorado Bd. of Pharmacy*, 2010 WL 3547898, at *3.[12]

Moreover, in *United States v. Acklen*, 690 F.2d 70, 75 (6th Cir. 1982), the Sixth Circuit specifically found that a pharmacist has a reduced expectation of privacy in records kept in compliance with the CSA.  In this case, the DEA "used administrative inspection warrants issued pursuant to 21 U.S.C.A. § 880 to search the premises of the defendant's pharmacy, removing prescriptions he suspected were forged or altered."[13]  *In re Subpoenas Duces Tecum Nos. A99-001, A99-002, A99-003 and A99-004*, 51 F. Supp. 2d 726, 732 (W.D. Va. 1999) (summarizing the case background in *United States v. Acklen*, *supra*).  The Sixth Circuit reversed the district courts granting of a motion to suppress as to one of the administrative inspection warrants based on a violation of the Fourth Amendment. *Acklen*, 690 F.2d at 75.  The Sixth Circuit specifically held that, like the mining, firearms, and liquor industries, the pharmaceutical industry is a

---

[11] The District Court entered an "Order Affirming Recommendation and Granting Petition to Enforce Administrative Subpoenas Issued by the Drug Enforcement Agency on September 3, 2010. *See United States Dep't of Justice v. Colorado Bd. of Pharmacy*, No. 10-cv-01116-WYD-MEH, 2010 WL 3547896, at *1 (D. Colo. Sept. 3, 2010).

[12] In addition, as set forth above, the United States Magistrate Judge found that the Colorado state law that restricted release of prescription drug use information in the PDMP to law enforcement officials was preempted by 21 U.S.C. § 876.

[13] "21 U.S.C.A. § 880 authorizes the Attorney General or her designees to enter certain premises for the purpose of 'inspecting, copying, and verifying the correctness of records, reports, or other documents required to be kept or made under the Controlled Substances Act.'" *In re Subpoenas Duces Tecum*, 51 F. Supp. 2d at 732 n.4.

"pervasively regulated industry and consequently pharmacists and distributors subject to the Controlled Substances Act have a reduced expectation of privacy in the records kept in compliance with the Act." *Id.*; *see also United States v. Jamieson-McKames Pharm., Inc.*, 651 F.2d 532 (8th Cir. 1981) (holding that pharmacist had no reasonable expectation of privacy in items subject to administrative inspection under the Food, Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.*). The Court in *Acklen* held that the traditional judicial probable cause requirement did not apply to administrative inspection warrants. *Acklen*, 690 F.2d at 74-75. The Court further stated that the warrant in question, which was issued before any commitment to criminally prosecute the defendant, was valid because it had been issued upon a showing of "administrative probable cause under 21 U.S.C. § 880(d)." *Acklen*, 690 F.2d at 75.

In *United States v. Rogers*, an unpublished opinion, the Sixth Circuit extended the reasoning of *Acklen* to apply to the issuance by FBI agents of an administrative subpoena to a pharmacist pursuant to 21 U.S.C. § 876(a). *See United States v. Rogers*, 976 F.2d 734, 1992 WL 217722, at *4-5 (6th Cir. Sept. 9, 1992). In this case, Rogers, a licensed Michigan pharmacist and owner of a pharmacy, appealed his jury convictions of one count of conspiracy to distribute a controlled substance and twenty counts of distribution of controlled substances outside the course of legitimate pharmacy practice. *Rogers*, 1992 WL 217722, at *1. Rogers argued, *inter alia*, that "the use of an administrative subpoena pursuant to 21 U.S.C. § 876, rather than a judicial search warrant, violated his Fourth Amendment rights, since he was clearly the 'target' of the investigation." *Rogers*, 1992 WL 217722, at *4. The Court, noting the *Acklen* decision and that administrative subpoenas under section 876 of the CSA do not require some level of

probable cause but "merely a finding of relevancy versus materiality," found that the scope of the search and the manner in which it was conducted was valid.[14] *Rogers*, 1992 WL 217722, at *5.

Finally, the Supreme Court has held, in cases involving administrative subpoenas, that the Fourth Amendment, at most, ensures that the inquiry is one the demanding agency is authorized by law to make and that the materials sought are relevant to the authorized inquiry and guards against abuse by way of too much indefiniteness or breadth in the things required to be "particularly described." *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208 (1946).[15]  In other words, while valid subpoenas duces tecum do not constitute seizures, invalid subpoenas, which are defined as those that are not sufficiently limited in scope, relevant in purpose, or specific in directive such that compliance will be unreasonably burdensome, may constitute illegal searches and seizures. *See Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984).

In this case, it is clear that the information sought by the DEA is relevant to its investigation, but the question is whether the use of an administrative subpoena to obtain the information sought is reasonable.  After thoroughly reviewing the case law set forth above, the Court finds the reasoning set forth in *Colorado Board of Pharmacy*—holding that properly authorized DEA subpoenas of confidential state pharmacy records in a federal investigation of possible CSA violations by three physicians were per se reasonable, and thus, passed Fourth

---

[14] The Court specifically stated, "Although *Acklen* involved administrative warrants which require some level of probable cause, as opposed to the § 876 administrative subpoena at issue here which requires merely a finding of relevancy versus materiality, the distinction does not require a different result under the rationale of *Acklen*, since the agents were clearly permitted to execute the subpoena absent suspicion." *Rogers*, 1992 WL 217722, at *5.

[15] The Court notes that there is some case law that indicates the Subpoena at issue might be subject to the traditional probable cause standard, at least where the use of the administrative subpoena is, as in this case, for purposes of a criminal investigation. *See, e.g.*, *In re Subpoenas Duces Tecum*, 51 F. Supp. 2d at 732-736 (discussion of issue and review of various cases). *But see Doe v. United States*, 253 F.3d 256, 264 (6th Cir. 2001) ("Unlike the Fourth Circuit [in *In re Subpoena Duces Tecum*, 228 F.3d 341, 347-49 (4th Cir 2000)], the district court in *In re Subpoena Duces Tecum*[, 51 F. Supp. 2d 726, 733-36 (W.D. Va. 1999),] was more troubled by the notion of simply applying the reasonable relevance standard to subpoenas issued under § 3486.").

Amendment muster—more persuasive than the analysis in *Oregon Prescription Drug Monitoring Program*.   To begin with, as noted by the Court in *Acklen*, 690 F.2d at 75, the pharmaceutical industry is a "pervasively regulated industry" and "virtually every phase of the drug industry is heavily regulated, from packaging, labeling, and certification of expiration dates." *Jamieson-McKames Pharm., Inc.*, 651 F.2d at 537.   While the cases discussed above mainly dealt with pharmacies and pharmacists, the Court concludes that such analysis can easily be applied to physicians, and in turn, their patients.   Both have a reduced expectation of privacy in the medical records regarding controlled substances as such records are relevant to the issue of whether there has been compliance with the CSA, a federal law that regulates controlled substances.   *See* 21 U.S.C. §§ 822, 823.   Zadeh, a DEA registrant under the CSA, and in turn his patients, cannot reasonably claim that Zadeh was not aware of the CSA and his obligation under such law to dispense and distribute controlled substances in a manner that is authorized by law.[16]   Moreover, pursuant to the CSA, the government's stake in the investigation and the strong public interest in regulating controlled substances outweigh the individual privacy interests asserted herein.   *See Ferguson v. City of Charleston*, 186 F.3d 469, 483 (4th Cir. 1999), *cert. granted on other grounds*, 528 U.S. 1187 (2000) (stating that the government has a compelling interest in identifying illegal activity and in deterring future misconduct).   Thus, the Court concludes that the Subpoena, as limited by the Government as set forth in July 11, 2014 Status Report, does not violate the Fourth Amendment.

---

[16] Generally, "[t]he Controlled Substances Act prohibits a person from dispensing or distributing a controlled substance." *United States v. MacKay*, 715 F.3d 807, 814 (10th Cir. 2013). "But a physician is exempt from this prohibition as long as he is registered and acting as authorized." *Id.*; *see* 21 U.S.C. §§ 822, 823. "For a controlled substance prescription to be effective, the prescription 'must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.'" *MacKay*, 715 F.3d at 814 (quoting 21 C.F.R. § 1306.04(a)).

### D. **Non-Disclosure Language in Subpoena**

Finally, Zadeh argues that the nondisclosure language in the Subpoena which prohibits him from disclosing any information regarding the Subpoena to anyone, including his patients, is not based upon any legal authority and that the DEA should be required "to provide justification for issuing such a draconian non-disclosure request." Def.'s Resp. to Pet. at 29; *see* Def.'s Resp. to Pet. at 27-29. The Court agrees. Because the Subpoena's nondisclosure language does not appear to be based on any legal authority, the Court concludes that Zadeh is not bound by such language.

### **RECOMMENDATION**

Based on the foregoing, the Court **RECOMMENDS** that the Government's Petition to Enforce Drug Enforcement Administration Administrative Subpoena [doc. 1] be **GRANTED** and that the District Court order Zadeh to respond to the Subpoena, as limited by the Government as set forth in the July 11, 2014 Status Report, within fourteen (14) days after the District Court's order.

### **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a

proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **December 17, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 3, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

18