IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-cv-106-O |
| | § | |
| ABBAS T. ZADEH, | § | |
| | § | |
| Respondent. | § | |
| | § | |

ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The United States Magistrate Judge made findings, conclusions, and a recommendation in this case. *See* Findings, Conclusions, & Recommendation ("FCR"), ECF No. 29. The Magistrate Judge recommended that the Court grant the Government's petition for an administrative subpoena. Respondent objected, and the Government responded to those objections. *See* Resp't's Objections, ECF No. 32; Pet'r's Resp., ECF No. 35. The Court has conducted a de novo review of those portions of the proposed findings and recommendation to which an objection was made.

I.      BACKGROUND

The United States Drug Enforcement Agency ("DEA") is currently conducting an investigation concerning possible violations of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-971, by Respondent. Pet. Enforce Subpoena ¶ 5, ECF No. 1.  Respondent, Dr. Abbas Zadeh ("Respondent" or "Dr. Zadeh"), is a DEA registrant who is permitted to prescribe controlled substances in Schedules II-V as defined by the CSA. *Id.* at ¶ 4. On December 16, 2013, the DEA issued a subpoena ("the Subpoena") to Respondent under 21 U.S.C. § 876(a), seeking the production

of 35 specific patient files for the period between October 1, 2012, and November 25, 2013. *Id.* at ¶ 7. When Dr. Zadeh did not comply with the subpoena, the United States sought enforcement through the instant Petition pursuant to 21 U.S.C. § 876(c) on February 13, 2014. *Id.* at ¶ 8.

On December 3, 2014, the Magistrate Judge issued his findings of fact, conclusions of law, and recommendation that the DEA's Petition to Enforce the Subpoena be granted. *See* FCR 17, ECF No. 29. Dr. Zadeh filed his objections on January 7, 2015. *See* Resp't's Objections, ECF No. 32.

## II.   LEGAL STANDARD

### A.   Standard for Enforcing Administrative Subpoenas

When a district court is asked to enforce an administrative subpoena, the "court's role is limited to evaluating (1) whether the subpoena was issued for a lawful purpose within the statutory authority of the issuing agency; (2) the documents requested are relevant to that purpose; and (3) the subpoena demand is reasonable and not unduly burdensome." *Winters Ranch P'ship v. Viadero*, 123 F.3d 327, 329 (5th Cir. 1997); *accord United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 488 (5th Cir. 2014); *see also United States v. Powell*, 379 U.S. 48, 57-58 (1964) (holding that enforcement of administrative subpoenas requires a showing "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [agency's] possession, and that the administrative steps required by the [statute] have been followed").

"The Government bears the initial burden to show that the criteria have been met, although the burden to make a prima facie case is 'minimal.'" *Transocean*, 767 F.3d at 489 (internal citations omitted); *see also United States v. Tex. Heart Inst.*, 755 F.2d 469, 474 (5th Cir. 1985) ("That initial burden is a minimal burden, which may be met by a simple affidavit filed with the petition to enforce

2

the summonses by the agent who issued the summonses."), *rev'd on other grounds*, *United States v. Barrrett*, 837 F.3d 1341 (5th Cir. 1988). "Once the Government has made a prima facie case, the burden of going forward shifts to the party opposing the subpoenas." *Transocean*, 767 F.3d at 489 (internal citations omitted).

### B.   The Fourth Amendment and Patient Medical Records

An administrative subpoena is consistent with the Fourth Amendment if "the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry." *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946). The Supreme Court has refused to require that an agency have probable cause to justify issuance of an administrative subpoena. *See Powell*, 379 U.S. at 57. Administrative agencies have the "power of inquisition . . . analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950). Generally, "'no interest legitimately protected by the Fourth Amendment' is implicated by governmental investigating activities unless there is an intrusion into a zone of privacy, into 'the security a man relies upon when he places himself or his property within a constitutionally protected area.'" *United States v. Miller*, 425 U.S. 435, 441 (1976) (quoting *Hoffa v. United States*, 385 U.S. 293, 301-02 (1966)) (holding that bank records were not "private papers," but rather the business records of the banks, in which respondent had no possessory or ownership interest).

### C.   Texas Medical Practice Act

The Texas Medical Practice Act explicitly discusses confidential communications. "A record of the identity, diagnosis, evaluation, or treatment of a patient by a physician that is created or

3

maintained by a physician is confidential and privileged and may not be disclosed except as provided." Tex. Occ. Code Ann. § 159.002(b) (West 2013). "An exception to the privilege of confidentiality . . . exists only with respect to the following: (1) a governmental agency, if the disclosure is required or authorized by law." *Id.* at § 159.004.

### D.   Federal Preemption

"[I]t is a fundamental principle of the Constitution . . . that Congress has the power to preempt state law." *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 336 (5th Cir. 2005). This preemptive power is derived from the Supremacy Clause of the United States Constitution, Article VI, Clause 2. *Hillsborough Cnty. Fla. v. Automated Med. Labs.*, 471 U.S. 707, 712 (1985). State law may be preempted under any one of three theories: (1) express preemption; (2) field preemption; or (3) conflict preemption. *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 389 (5th Cir. 2005). For Congress to have expressly preempted state law, the federal statute must clearly state that its provisions preempt state law. For field preemption, Congress's intent to preempt state law in a particular area can be inferred when "federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation." *Hillsborough Cnty.*, 471 U.S. at 713 (internal quotation marks omitted). Finally, conflict preemption arises when "compliance with both federal and state regulations is a physical impossibility." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (internal quotation marks omitted). It is unclear whether there is a presumption against preemption. *See Wyeth v. Levine*, 555 U.S. 555, 624 n.14 (2009).

### E.   Limitations on Administrative Subpoenas

Based on the enforcement standard for administrative subpoenas, the documents requested

4

must be relevant to the purpose of the investigation and the demand must be reasonable and not unduly broad or burdensome. *Viadero*, 123 F.3d at 329. For the purposes of administrative subpoenas, the notion of relevancy is a broad one, and so long as the material requested touches a matter under investigation, the subpoena will survive a challenge that it is not relevant. *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989). "[A] subpoena is not unreasonably burdensome unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *FTC v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981). Fraud, deceit, and trickery constitute abuse of process and are grounds for denying enforcement of an administrative subpoena. *SEC v. ESM Gov't Sec., Inc.*, 645 F.2d 310, 317 (5th Cir. 1981).

## III.   ANALYSIS

The Court begins its analysis by determining whether the Subpoena is enforceable on its face and then analyzes each of Respondent's objections.

### A.   Enforcement of the Subpoena

The Court's role in determining whether to enforce an administrative subpoena is well-established law. As discussed above, the "[C]ourt's role is limited to evaluating (1) whether the subpoena was issued for a lawful purpose within the statutory authority of the issuing agency; (2) the documents requested are relevant to that purpose; and (3) the subpoena demand is reasonable and not unduly burdensome." *Viadero*, 123 F.3d at 329; *accord Transocean*, 767 F.3d at 488; *see also Powell*, 379 U.S. at 57-58. "The Government bears the initial burden to show that the criteria have been met, although the burden to make a prima facie case is 'minimal.' Once the Government has made a prima facie case, the burden of going forward shifts to the party opposing the subpoenas."

5

*Transocean*, 767 F.3d at 489 (internal citations omitted).

The Court reviewed the Subpoena, the Petition to Enforce, and the Declaration of DEA Diversion Investigator Michelle Penfold. The Court finds that the Subpoena appears to comport with the basic requirements for enforcement. *See* Pet'r's App. Supp. Pet. Enforce Ex. 2 (DEA Subpoena), ECF No. 3; Pet'r's App. Supp. Pet. Enforce Ex. 1 (Penfold Decl.), ECF No. 3; *Viadero*, 123 F.3d at 329. The CSA permits the DEA to investigate possible violations of the CSA and to do so by issuing administrative subpoenas. *See* 21 U.S.C. § 876(a); DEA Subpoena, ECF No. 3. Furthermore, on its face, the Subpoena appears to be reasonable and not unduly burdensome because it is limited in time and scope. *See id.* The Government has therefore met the criteria for Court enforcement of the Subpoena.

## B.     The Subpoena and the Fourth Amendment

Respondent contends that the DEA's request for private medical records violates the Fourth Amendment to the United States Constitution. *See* Resp't's Objections 4-6, ECF No. 32. He also argues that the Court was incorrect to rely on the Supreme Court's decisions in *Powell* and *Morton Salt* as well as case law relating to the disclosure of pharmaceutical records. *See id.*

An administrative subpoena is consistent with the Fourth Amendment if "the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry." *Okla. Press Publ'g Co.*, 327 U.S. at 209. As discussed above, the Subpoena comports with the established enforcement standard. Here, the DEA's investigation is authorized under the CSA, and the documents requested directly relate to the DEA's investigation. Additionally, there is no requirement on the Government to establish probable cause in order to obtain the requested records. *See Powell*, 379 U.S. at 57.

6

Respondent directs the Court to *Ferguson v. City of Charleston*, 532 U.S. 67 (2001), for the proposition that medical records are protected. The *Ferguson* Court held that a hospital's use of the urine tests of pregnant patients to report cocaine use to police constituted unreasonable searches absent patient consent. *Id.* at 81-86. The situation here is different. In *Ferguson*, the hospital was not authorized by statute to investigate violations of the law. Here, the DEA is expressly instructed to investigate possible violations of the CSA, and Congress granted the DEA the administrative subpoena power as a tool to conduct those investigations.

While Respondent points to the sensitive nature of medical records and the distinction between medical records and pharmaceutical records, the law indicates that the investigatory nature of administrative subpoenas still merits a relatively low standard of review. *See Okla. Press Publ'g Co.*, 327 U.S. at 209. Accordingly, the Court finds that the DEA's subpoena is consistent with the Fourth Amendment, and Respondent's objections regarding the Fourth Amendment and the Court's reliance on *Powell* and *Morton Salt* are **OVERRULED**.

### C.    The Subpoena and Texas Law

Dr. Zadeh contends that complying with the Subpoena puts him at risk for civil liability under Texas law. Resp't's Objections 21, ECF No. 32. Section 159.004 of the Texas Occupations Code, which excludes disclosure to governmental agencies if the disclosure is required or authorized by law, is an exception to Respondent's claim of privilege. *See* Tex. Occ. Code § 159.004. Because the Court has found that the Subpoena is enforceable on its face, it is subject to the exception in § 159.004. Due to this exception, the Court need not address whether the Texas law is preempted by federal law. However, even if the Subpoena did not fall within the exceptions in the Texas Occupations Code, it would trigger conflict preemption, and the Texas law would be preempted. *See*

*Pac. Gas & Elec. Co.*, 461 U.S. at 204. Accordingly, Respondent's objection that he is prohibited from disclosing the patient records under Texas law is **OVERRULED**.

> **D.      The Scope of the Subpoena**

For the purposes of administrative subpoenas, the notion of relevancy is a broad one, and so long as the material requested touches a matter under investigation, the subpoena will survive a challenge that it is not relevant. *Sandsend Fin. Consultants, Ltd.*, 878 F.2d at 882. The Court finds that the Subpoena requests material that touches the matter under investigation, as it is sufficiently narrow in time and scope. Accordingly, Respondent's objection to the scope of the Subpoena is **OVERRULED**.

> **E.      Abuse of Process**

The Fifth Circuit has declined to impose a rigid definition for abuse of process. *ESM Gov't Sec., Inc.*, 645 F.2d at 314. In *Powell*, the Supreme Court noted that it would be an abuse of process, for example, "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." 379 U.S. at 58. The burden is on the defendant to establish an abuse of process. *Id.* In an abuse of process analysis, "a case-by-case, totality-of-the-circumstances test is appropriate, including consideration of the government's good faith and the harm caused by any unlawful conduct." *United States v. Wilson*, 864 F.2d 1219, 1222 (5th Cir. 1989).

In his objections, Dr. Zadeh presents little more than a correlation between the timing of the DEA's investigations into his practice and his son's practice to support his argument that this investigation began in retaliation for his son's refusal to comply with a subpoena. *See* Resp't's

8

Objections 22-23, ECF No. 32. Dr. Zadeh has presented no evidence that the DEA exerted any improper pressure on either person during its investigations. Instead, Dr. Zadeh asserts that this investigation is not legitimate because: (1) there was no corresponding Texas Medical Board investigation; and (2) the DEA failed to automatically renew his certificate even though he was entitled to automatic renewal under 21 C.F.R. § 1301.37. *Id.* Although federal and state investigations often proceed simultaneously, parallel state court investigations are not required. According to the DEA, the certificate initially was not issued due to concerns about Dr. Zadeh's health. As stated above, the Court has found that this investigation was conducted for a lawful purpose. Under the totality of the circumstances, the Court finds that the investigation was not an abuse of process. Accordingly, Respondent's abuse of process objection is **OVERRULED**.

## IV.    CONCLUSION

Based on the foregoing, the Court **ACCEPTS** the Findings, Conclusions, and Recommendation of the Magistrate Judge as the findings of the Court. Respondent's objections are **OVERRULED**. Accordingly, the Government's Petition to Enforce the DEA Subpoena is hereby **GRANTED**, and Respondent is **ORDERED** to comply with the DEA's Subpoena forthwith.

**SO ORDERED** on this **31st day** of **January, 2015**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**